IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:19-CR-33-FL
No. 7:24-CV-828-FL

GARY LYNN GATLIN,

                          Petitioner,

v.                                                              **ORDER AND**
                                                                **MEMORANDUM AND**
                                                                **RECOMMENDATION**
UNITED STATES OF AMERICA,

                          Respondent.

This matter comes before the court on motions by Petitioner Gary Lynn Gatlin ("Gatlin")

to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, [DE-137], and to amend

or supplement his § 2255 petition, [DE-160, -161]; and the Government's motion to dismiss, [DE-

141]. Gatlin filed a response in opposition to the Government's motion to dismiss, [DE-159], and

the Government filed a response in opposition to Gatlin's motion to amend or supplement, [DE-

171, -173]. The matters are fully briefed and ripe for decision. For the reasons stated below,

Gatlin's motion to amend or supplement is denied and it is recommended that the Government's

motion to dismiss be allowed.

## I.    Procedural History

A Grand Jury sitting in the Eastern District of North Carolina returned an indictment

charging Gatlin with possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1) and 924, forcible

assault of federal officers, 18 U.S.C. § 111(a)(1) and (b), and using a firearm in furtherance of a

crime of violence, 18 U.S.C. § 924(c)(1)(A)(iii). [DE-31]. After a two-day trial, where Gatlin was

represented by counsel, a jury convicted him on all counts. [DE-58, -65]. Gatlin then moved for

withdrawal of his retained counsel, Carlton Mansfield ("Mansfield"), and requested appointed

counsel. [DE-68, -69]. The court granted Gatlin's motion for new counsel and appointed Elisa Cyre Salmon ("Salmon") and the Salmon Law Firm to his case. [DE-71, -74]. Salmon represented Gatlin for the punishment phase of his case by having Gatlin's mental limitations assessed, discovering he did in fact have an intellectual disability and a low IQ, and then moving for a post-trial competency evaluation. [DE-97]. The court ultimately denied Gatlin's motion for a competency evaluation, [DE-106], but still considered his intellectual disability at sentencing. [DE-112]. The court sentenced Gatlin to 132 months' imprisonment and three years' supervised release, granting a downward variance after taking into account his intellectual disability. [DE-112]; [DE-130] at 22–23.

Following sentencing, with Salmon's assistance, Gatlin filed a motion for a new trial based on the discovery of new evidence, that Gatlin had an intellectual disability. [DE-116]. The court denied Gatlin's motion for a new trial, [DE-116], finding that there was no new evidence to consider as Gatlin, his family, and trial attorney Mansfield, were aware he suffered from mental limitations, [DE-120].

With the assistance of counsel, Gatlin appealed his conviction, and on August 30, 2023, the Fourth Circuit affirmed the judgment of the trial court. [DE-126, -131]. Gatlin then filed pro se the instant section 2255 petition on August 28, 2024. [DE-137]. The Government moved to dismiss the petition on October 8, 2024, [DE-141]; Gatlin, without the assistance of counsel, timely responded, [DE-144, -145]; this court appointed an attorney to assist Gatlin with his 2255 petition on May 5, 2025; Gatlin, with the assistance of counsel, filed an additional response, [DE-159], moved for leave to amend or supplement his 2255 petition, [DE-160], and filed an amended motion to vacate under 2255, [DE-161]; the Government replied in opposition, [DE-171, -173]; and Gatlin filed a response, [DE-172].

2

## II. Standard of Review

After conviction and exhaustion or waiver of any right to appeal, courts and the public can presume that a defendant stands fairly and finally convicted. *See United States v. Frady*, 456 U.S. 152, 164–65 (1982). However, prisoners in federal custody may attack the validity of their convictions pursuant to 28 U.S.C. § 2255. Section 2255 provides a means for a defendant convicted of a federal offense to collaterally attack a conviction or sentence on four grounds: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). "[T]hus § 2255 relief is not limited to constitutional error in a conviction or sentence." *United States v. Mikalajunas*, 186 F.3d 490, 495 (4th Cir. 1999) (citations omitted). Where a petitioner seeks relief from a nonconstitutional error, "the scope of review . . . is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves a fundamental defect which inherently results in a complete miscarriage of justice, or is inconsistent with the rudimentary demands of fair procedure[.]" *Id.* (internal quotation marks and citations omitted). "In a § 2255 proceeding, the burden of proof is on petitioner to establish his claim by a preponderance of the evidence." *Toribio-Ascencio v. United States*, No. 7:05-CR-97-FL, 2010 WL 4484447, at *1 (E.D.N.C. Oct. 25, 2010) (citing *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958)).

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243–44 (4th Cir. 1999). This standard applies equally to a Rule 12(b)(6) motion challenging a § 2255 motion. *See* Rule 12, Rules Governing Section 2255

3

Proceedings (applying the Federal Rules of Civil Procedure to § 2255 proceedings to the extent such rules are not inconsistent with any statute or the § 2255 rules). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 872 (4th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). Moreover, a court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

## III. Analysis

### i. The Motion to Amend or Supplement

Gatlin's initial motion to vacate under section 2255, filed August 28, 2024, asserted a single claim for ineffective assistance of counsel. [DE-137]. Although the initial 2255 motion was submitted by the attorneys who represented Gatlin at the sentencing phase of his case, they

4

included a letter indicating they did so as a professional courtesy to their former client and that Gatlin was pro se, and requesting counsel be appointed. [DE-137-1]. The court appointed counsel and Gatlin, with the assistance of his attorney, filed a motion to amend or supplement his section 2255 petition on July 31, 2025, similarly asserting ineffective assistance of counsel, but this time in six separate claims. [DE-160, -161]. Before this court may review the merits of Gatlin's amended or supplemental 2255 petition, the court must first determine whether Gatlin may amend his initial petition. *See United States v. Price*, 357 F. Supp. 2d 63, 66 (D.D.C. 2004) (addressing propriety of defendant's amendments to initial § 2255 petition before evaluating the merit of his claims).

"[T]he standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical." *Carroll v. United States*, No. 7:12-CR-00057-F-1, 2016 WL 8376523, at *5 (E.D.N.C. May 26, 2016) (quoting *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002)). "The Rules Governing Section 2255 do not specify a procedure for amending motions. Therefore[,] courts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion." *United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000); *see* Fed. R. Civ. P. 15(a)(1)(B); *Brown v. United States*, No. 2:16-CR-0122-DCN-6, 2020 WL 4226710, at *7 (D.S.C. July 23, 2020) ("[C]ourts considering motions to supplement § 2255 petitions have generally defaulted to the general amendment procedure provided by Federal Rule of Procedure 15.")). "A § 2255 claim presented in a motion to amend that is filed more than one year after the conviction becomes final is untimely under 28 U.S.C. § 2255(f)(1), unless the claim relates back to a timely-filed claim, pursuant to Rule 15(c) of the Federal Rules of Civil Procedure." *Carroll*, 2016 WL 8376523, at *4 (citing *Mayle v. Felix*, 545 U.S. 644, 662-64 (2005)). "A claim relates back when the claim or defense asserted in the amended pleading arose out of the conduct,

5

transaction, or occurrence set forth . . . in the original pleading." *Id.* (quoting *Pittman*, 209 F.3d at 317) (quotations omitted).

Gatlin's initial 2255 motion asserted a single ground for relief: ineffective assistance of counsel by his trial counsel, Mansfield. [DE-137] at 5. Under "supporting facts" Gatlin asserted Dr. James Hilkey diagnosed him as intellectually disabled following trial; Mansfield did not perceive Gatlin's intellectual disability until after the trial; and Mansfield "was ineffective by failing to evaluate and present evidence re intellectual disability at trial, going to mens rea & essential element of lawful self-defense." *Id.* In the amended 2255 motion Gatlin asserts six separate grounds for the violation of his right to effective assistance of counsel. [DE-161] at 5.

When appointing an attorney to assist Gatlin with his § 2255 petition, the court instructed any supplementation to be completed by no later than May 30, 2025, and subsequently granted two extensions. [DE-146, -149, -151]. The final extension required Gatlin to supplement his section 2255 petition or respond to the Government's motion to dismiss by no later than July 31, 2025, which with Gatlin complied. [DE-151, -159, -160, -161, -162].

The Government asserts the allegations in the amended motion, [DE-161], do not relate back to those made in the initial motion, [DE-137], and therefore they should be dismissed as untimely. [DE-171] at 10–11. Specifically, the Government notes the initial 2255 motion asserts Mansfield was ineffective for failing to present evidence of Gatlin's intellectual disability at trial to bolster his lawful self-defense argument. *Id.* at 11. Each claim listed in the amended motion is essentially the same claim for ineffective assistance of counsel, describing in greater detail how Gatlin was prejudiced by Mansfield's failure to recognize or investigate his intellectual disability and mental limitations. [DE-161]. Because the claims raised in Gatlin's amended motion appear to arise out of the same conduct alleged in his initial claim, the allegations relate back and the

6

amendment was timely.

Although the court is obligated to "freely give leave when justice so requires," supplementation may be denied in the case of "bad faith, undue prejudice to the opposing party, or futility." *Stanley v. United States*, No. 5:15-CR-166-2-BR, 2022 WL 138688, at *3 (E.D.N.C. Jan. 13, 2022) (quoting Fed. R. Civ. P. 15(a)(2); *Pittman*, 209 F.3d at 317). Supplementation may be denied as futile "if the claim it presents would not survive a motion to dismiss." *Id.* at *4 (quoting *Save Our Sound OBX, Inc. v. N.C. Dep't of Transp.*, 914 F.3d 213, 228 (4th Cir. 2019)). There is no indication that the supplementation was made in bad faith or places an undue prejudice on the Government, but the Government does contend each claim in the amended motion is futile and therefore should be denied.

### ii. The Amended § 2255 Petition

In his amended petition, Gatlin alleges six grounds for relief, all based on the assertion of ineffective assistance of his trial counsel, Mansfield. [DE-161] at 3–10. The Sixth Amendment guarantees criminal defendants effective assistance of counsel. *United States v. Murillo*, 927 F.3d 808, 815 (4th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984)). To demonstrate ineffective assistance of counsel, a petitioner must show that counsel's representation was deficient, and that the deficient performance prejudiced the defendant. *Strickland*, 466 U.S. at 687. To establish deficient performance, the petitioner must overcome a "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). *Strickland* dictates that "tactical and strategic choices made by counsel following due consideration do not constitute ineffective assistance of counsel" because "[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence[.]" 466

7

U.S. at 689. Thus, "[i]n evaluating a claim for ineffective assistance on the grounds that trial counsel decided not to investigate a particular issue, that decision must be 'directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.'" *Hinton v. United States*, No. 2:06-CR-15-BO, 2011 WL 4949977, at \*4 (E.D.N.C. Oct. 18, 2011) (citations omitted), *appeal dismissed*, 472 F. App'x 162 (4th Cir. 2012).

As to the prejudice component, a petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Gatlin contends that his trial counsel, Mansfield, rendered ineffective assistance in several ways, all stemming from his deficient performance in failing to investigate Gatlin's background or question his competency prior to trial. First, that Mansfield performed deficiently by failing to identify Gatlin's intellectual disability and act appropriately on it. [DE-161] at 5. Second, that Gatlin was prejudiced by Mansfield's failure to object to the admission of his confession. *Id.* at 6. Third, that Gatlin was prejudiced by Mansfield's failure to recognize Gatlin was unable to assist in his own defense. *Id.* at 8. Fourth, that Gatlin was prejudiced by the fact that Mansfield did not argue Gatlin was unable to appreciate the nature and quality or the wrongfulness of his acts, which would be the basis of an insanity defense. *Id.* at 9. Fifth, that Gatlin was prejudiced by Mansfield's failure to use Gatlin's intellectual disability to bolster a self-defense argument. *Id.* at 10. Sixth, and finally, that Gatlin was prejudiced by Mansfield's failure to bring his intellectual disability to the attention of the jury or Government, which may have resulted in a plea deal. *Id.* Here, however, the failure to raise arguments at trial which may have been available to counsel had he discovered Gatlin's intellectual disability, did not result in prejudice, and are therefore futile.

8

### a. Failure to Identify Gatlin's Intellectual Disability

Here, beginning with his first claim, Gatlin alleges that Mansfield performed deficiently by failing to investigate Gatlin's mental limitations and identifying his intellectual disability. It is unnecessary to determine whether Mansfield performed deficiently if Gatlin cannot show prejudice. *See Strickland*, 466 U.S. 697 (explaining "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies" or "to address both components of the inquiry if the defendant makes an insufficient showing on one").

The rest of Gatlin's claims of ineffective assistance of counsel are attempts to demonstrate precisely how Gatlin was prejudiced by Mansfield's alleged deficient performance. Gatlin's claims assert that but for Mansfield's deficiency there is a reasonable probability the outcome of his trial would have been different because had Mansfield known of Gatlin's intellectual disability Mansfield could have: (1) sought to suppress Gatlin's confession before trial and/or objected its admission at trial; (2) requested a competency hearing where Gatlin would have been found incompetent to stand trial; (3) argued Gatlin was not guilty by reason of insanity; (4) asserted Gatlin was incapable of forming the requisite intent required for each violation; or (5) brought the information regarding Gatlin's mental limitations to the Government to request a plea deal. [DE-161].

### b. Admission of Gatlin's Confession at Trial

In his second claim, Gatlin asserts he was prejudiced by Mansfield's failure to seek suppression of his confession at trial. [DE-161] at 6. Following his arrest, Gatlin signed a waiver of his Miranda rights before giving the confession to officers; however, Gatlin contends Mansfield should have argued this waiver was invalid because it could not have been made knowingly or

9

voluntarily because Gatlin was legally incompetent at the time. [DE-162] at 13. Further, Gatlin alleges Mansfield could have mitigated the impact of the confession by engaging an expert to testify how intellectually disabled persons are more likely to be susceptible to coercion. *Id.* The Government asserts there is no prejudice because Gatlin never alleged his waiver was compelled; his confession is supported by overwhelming evidence; and even without admission of the confession the jury's outcome would have been the same. [DE-171] at 17–18.

Where an ineffective assistance of counsel claim "rests on trial counsel's failure to move to suppress evidence, establishing actual prejudice requires the petitioner to establish that the underlying claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Bone v. Polk*, 441 F. App'x 193, 198 (4th Cir. 2011) (citing *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005); *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). Establishing a valid waiver of *Miranda* rights requires the prosecution to "show that the waiver was knowing, intelligent, and voluntary . . . ." *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010). Waiver of *Miranda* rights "must be 'voluntary in the sense that it was the product of a free and deliberate choice,' and also it must be made 'with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.'" *United States v. Robinson*, 404 F.3d 850, 860 (4th Cir. 2005) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)). "Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived." *United States v. Cristobal*, 293 F.3d 134, 140 (4th Cir. 2002) (quoting *Moran*, 475 U.S. at 421). The totality of the circumstances the court weighs include "the background, experience, and conduct of the defendant." *Burket v. Angelone*, 208 F.3d 172, 199 (4th Cir. 2000) (citing *North Carolina v. Butler*, 441 U.S. 369, 374–75 (1979)).

10

Here, Gatlin alleges his waiver of *Miranda* rights is invalid because he was legally incompetent when he signed the waiver as "demonstrated by his intellectual disability." [DE-161] at 6. Gatlin does not offer any other facts to suggest his confession was involuntary and coerced, such as threats, intimidation, or promises of leniency. *See Blackmon by & through Canady v. Holder*, No. 5:23-CV-578-FL, 2024 WL 4156826, at \*11 (E.D.N.C. Sept. 11, 2024) (finding the plaintiff failed to plead an unconstitutionally obtained confession when the "complaint contain[ed] no factors pointing to coercion besides [the defendant's] mental illness and the officers' exploitation of his suggestibility"). Although Gatlin claims Mansfield could have hired an expert to testify that due to his intellectual disability, he was more susceptible to coercion tactics, without the assertion that the confession was coerced there is no reasonable probability that such testimony would result in a different outcome. *See Strickland*, 466 U.S. at 694 (to show prejudice the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."). Because "[c]oercive police activity is a necessary predicate to a finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment," and Gatlin has not alleged any facts to indicate his waiver was coerced, he has not plausibly alleged his waiver was not voluntary. *Cristobal*, 293 F.3d at 140.

Gatlin also predicates the confession not being made knowingly and intelligently exclusively on the assertion that he was legally incompetent due to his intellectual disability. [DE-161] at 6. However, having a low IQ "does not make [a person] per se incapable of intelligently waiving his rights." *Bone*, 441 F. App'x at 197 (quoting *Robinson*, 404 F.3d at 861); *see also Jones v. United States*, No. CIV.A. 7:05CV00299, 2006 WL 44323, at \*4 (W.D. Va. Jan. 9, 2006) (finding

11

"illiteracy or sub-par intelligence does not foreclose the possibility of a[n] . . . intelligent waiver") (collecting cases). "In cases involving defendants with low intellectual ability, the knowingness of the waiver often turns on whether the defendant expressed an inability to understand the rights as they were recited." *Robinson*, 404 F.3d at 861. At trial, Special Agent Cameron testified about Gatlin's confession, stating he read Gatlin his rights, which Gatlin stated he understood before waiving. [DE-77] at 126–27. Gatlin does not allege he was unable to understand his *Miranda* rights or the effect of the waiver, but only that he was lacking competency to waive his rights due to his intellectual disability.[1] [DE-162] at 13; *see United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013) (holding "vague and conclusory allegations contained in a section 2255 petition may be disposed of without further investigation by the District Court") (quoting *United States v. Thomas*, 221 F.3d 430, 437 (3d Cir. 2000)). Because Gatlin fails to allege facts to show his waiver of *Miranda* rights was not voluntarily, knowingly, or intelligently made the underlying claim that Mansfield could have suppressed the confession is without merit and Gatlin was not prejudiced by Mansfield's failure to attempt to do so. Therefore, Gatlin's motion to amend or supplement his 2255 motion to include the claim is denied.

### c. Unable to Assist in his own Defense

In his third claim, Gatlin asserts he was prejudiced by Mansfield's failure to recognize that Gatlin was unable to engage in the decision-making process or assist in his own defense. [DE-161] at 8. This is the same language used in 18 U.S.C. § 4241(a) which states the court shall grant

---

[1] Gatlin cites to *United States v. Deloatch*, No. DKC 10-0273, 2021 WL 2550507 (D. Md. June, 22 2021), to support his contention that Mansfield should have moved to suppress the confession based on Gatlin's intellectual disability. [DE-162] at 13. *Deloatch* discusses how competency is required to stand trial, and that, in addition to competency, to plead guilty or waive the right to the assistance of counsel, the defendant must show the waiver to be knowing and voluntary. 2021 WL 2550507 at *6 (quoting *Godinez v. Moran*, 509 U.S. 389, 400–01 (1993)). Gatlin appears to be conflating competency to stand trial and competency to waive the right to the assistance of counsel with the competency to waive the right to remain silent. *See Godinez*, 509 U.S. at 400–02; *Westbrook v. Arizona*, 384 U.S. 150 (1966). Regardless, Gatlin would still have to plausibly allege he never waived his right to remain silent knowingly, intelligently, or voluntarily for a court to find his waiver invalid.

12

a motion for a competency hearing "if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him *or to assist properly in his own defense*." (emphasis added).

In other words, Gatlin asserts he was prejudiced by Mansfield's failure to move for a competency hearing. To find prejudice in this instance, as opposed to deficient performance, Gatlin must sufficiently allege that he would have been found incompetent. *See Shelton v. United States*, No. 1:11CR397-1, 2015 WL 4651811, at *2 (M.D.N.C. Aug. 5, 2015) (finding no prejudice for failure to move for a competency hearing where the court concluded the petitioner was competent). Gatlin's attorney at the sentencing phase, Elisa Cyre Salmon, moved for a post-trial competency hearing which the district court denied, and the appeals court upheld. [DE-106, -131]. Gatlin cannot circumvent the Fourth Circuit's ruling on the competency issue "by re-raising the challenge in a § 2255 motion." *Dyess*, 730 F.3d at 360 (quoting *United States v. Linder*, 552 F.3d 391, 396 (4th Cir. 2009)). Because this court already found Gatlin was not entitled to a competency hearing, and the Fourth Circuit found no reversable error in that ruling, at this stage Gatlin is unable to allege facts to show he was prejudiced by Mansfield's failure to request a competency hearing. Therefore, Gatlin's motion to amend or supplement his 2255 motion to include the claim is denied.

### d. Insanity Defense

In his fourth claim, Gatlin alleges because Mansfield failed to identify his intellectual disability, he also failed to obtain an assessment of whether Gatlin could appreciate the nature and quality or the wrongfulness of his acts. [DE-161] at 9. Furthermore, Gatlin asserts had Mansfield obtained such assessment, he could have used it to attempt to negate the intent element of count two, forcible assault of federal officers, 18 U.S.C. § 111(a)(1) and (b). [DE-162] at 14–15.

13

Mansfield could have only accomplished this by successfully arguing section 111 was a specific intent crime, as opposed to a general intent crime, and that Gatlin's diminished capacity rendered him unable to form the requisite specific intent. *Id.*

The Government takes two issues with this claim. First, based on the language used it appears Gatlin is asserting Mansfield should have presented an insanity defense, despite there being no facts alleged to support an insanity defense. [DE-171] at 19–21. Second, according to the Government, all relevant authority has held section 111 is a general intent crime, not a specific intent crime, so presenting such evidence of diminished capacity would have been impermissible. [DE-171] at 21–22.

Here, Gatlin alleges within the same claim that he was prejudiced by Mansfield's failure to (1) assert the insanity defense premised on Gatlin's low IQ and (2) present psychiatric evidence to negate the intent element of count two, forcible assault of an officer. [DE-161] at 9. Gatlin does not allege there is currently an existing assessment that would show at the time of the offense he could not appreciate the nature and quality or the wrongfulness of his acts, but that he was nonetheless prejudiced by Mansfield's failure to obtain one.

First, to plausibly allege prejudice for failing to present an insanity defense Gatlin would have to demonstrate "a reasonable probability that counsel could have established that he was 'not guilty by reason of insanity.'" *Burris v. United States*, No. 3:19-CR-41-MOC-DCK-1, 2022 WL 2759076, at *8 (W.D.N.C. July 14, 2022) (quoting *Mann v. United States*, 66 F. Supp. 3d 728, 739 (E.D. Va. 2014). The Insanity Defense Reform Act (IDRA), 18 U.S.C. § 17, precludes a defendant from using a "'mental disease or defect' as a defense unless it demonstrates that the defendant 'was unable to appreciate the nature and quality of the wrongfulness of his acts.'" *United States v. Worrell*, 313 F.3d 867, 872 (4th Cir. 2002) (quoting 18 U.S.C. § 17). "Mental disease or defect

14

does not otherwise constitute a defense." 18 U.S.C. § 17. This means Gatlin cannot merely assert that he is not guilty due to his intellectual disability. *See Worrell*, 313 F.3d at 873. To assert an insanity defense Mansfield would have had to show due to Gatlin's intellectual disability, he was unable to understand the wrongfulness of his acts.

Here, Gatlin asserts Mansfield could have proffered the testimony of an expert and his family members to demonstrate he was unable to understand the nature and wrongfulness of his acts. [DE-162] at 14. However, to do so would have been futile considering testimony that Gatlin approached the officers, asking "What are y'all mother fuckers doing on my G.D. land," threatened to blow their heads off, and then left the scene to return minutes later with a shotgun which he immediately began firing, first in the air and then at the officers. [DE-77] at 32–35. As the court previously recognized in denying Gatlin's motion for a new trial, Gatlin spoke to the agents, expressed his intent to assault them, then acted in accordance with his expressed intent, which belies his claim that he could not understand the nature and wrongfulness of his acts. [DE-120] at 6.

In *Burris v. United States*, the court found the petitioner failed to demonstrate prejudice where he asserted his attorney should have presented an insanity defense, but failed to come forward with any evidence that would have reasonably supported an insanity defense. 2022 WL 2759076, at *8. "An attorney who reasonably determines that presenting an insanity defense is futile and chooses not to pursue it is not ineffective." *Id.* (citing *Knowles v. Mirzayance*, 556 U.S. 111, 125 (2009) (counsel was not ineffective for withdrawing an insanity defense after reasonably concluding that the defense would "almost certainly lose") & *United States v. Cintron*, 163 F.3d 599 (4th Cir. 1998) (counsel was not ineffective for determining that the defendant could not credibly assert an insanity defense)). "To show prejudice in this context, a petitioner has to show

15

a reasonable probability that counsel could have established that he was "not guilty by reason of insanity." *Burris*, 2759076, at \*8 (quoting *Mann*, 66 F. Supp. 3d at 739. Here, Gatlin similarly fails to allege facts that would have reasonably supported an insanity defense. Indeed, "incompetency and insanity are distinct concepts." *Daniels v. United States*, No. 7:14-CR-105-FL, 2019 WL 5869751, at \*6 (E.D.N.C. Oct. 22, 2019), *adopted*, 2019 WL 5866720 (E.D.N.C. Nov. 8, 2019) (citing *United States v. Green*, 468 F.2d 116, 118 (4th Cir. 1972)). In fact, "[t]he entry of a plea of not guilty by reason of insanity . . . presupposes that the defendant is competent to stand trial and enter a plea." *Medina v. California*, 505 U.S. 437, 449 (1992). Up until now Gatlin has asserted his intellectual disability made him incompetent to stand trial, which the district court and Fourth Circuit held to be unfounded. Relying on the same facts, Gatlin now includes the conclusory allegation that he was unable to appreciate the nature and wrongfulness of his acts at the time he committed them, which in turn would mean he is not guilty by reason of insanity. *See* [DE-162] at 14; *see also Dyess*, 730 F.3d at 359 ("vague and conclusory allegations contained in a section 2255 petition may be disposed of without further investigation by the District Court."). Gatlin's assertion that he was prejudiced by Mansfield's failure to present an insanity defense is unfounded as the facts alleged do not support a reasonable probability that Gatlin would have been found not guilty by reason of insanity.

Second, to plausibly allege prejudice for failing to argue Gatlin was unable to form the requisite intent required to violate section 111, there must be a reasonable probability that the argument would have undermined the results of the proceeding. *See Strickland*, 466 U.S. at 694. To receive a guilty verdict for this charge the Government had to prove Gatlin forcibly assaulted federal officers; while the officers were engaged in official duties; and that Gatlin did so in a voluntary and intentional manner. *See United States v. Behrens*, 604 F. App'x 307, 308 (4th Cir.

16

2015) (citing *Potter v. United States*, 691 F.2 1275, 1280 (8th Cir. 1982)); [DE-62] at 28.

Whether section 111 is a specific intent or general intent crime matters because in *Worrell*, the Fourth Circuit held "IDRA does not prohibit psychiatric evidence of a mental condition short of insanity when such evidence is offered purely to rebut the government's evidence of specific intent, although such cases will be rare."[2] 313 F.3d at 874 (collecting cases). "General intent crimes require only that the act be done 'voluntarily and intentionally, and not because of mistake or accident.'" *United States v. Ducore*, 312 F. Supp. 3d 535, 537 (E.D. Va. 2018) (quoting *United States v. Blair*, 54 F.3d 639, 642 (10th Cir. 1995)). "By contrast, specific intent crimes require that a defendant act 'not only with knowledge of what he is doing, but [also] with the objective of completing some unlawful act.'" *Id.* (quoting *Blair*, 54 F.3d at 642). "In the absence of an explicit statement that a crime requires specific intent, courts [] hold that only general intent is needed." *Id.* (quoting *United States v. Lewis*, 780 F.2d 1140, 1142–43 (4th Cir. 1986)).

The Government contends all relevant authority establishes section 111 is a general intent crime, thus such an argument on Gatlin's behalf would have been futile. [DE-171] at 21–22. To support this the Government cites to *United States v. Brown*, 592 F. App'x 164, 166 (4th Cir. 2014), an unpublished Fourth Circuit opinion. In *Brown* the Fourth Circuit concluded "specific intent to violate the statute" was not required for conviction and cited to the case *United States v. Williams*, 604 F.2d 277, 279 (4th Cir. 1979), which simply states knowledge of the victim's status as a federal officer is not required for conviction, as held by the Supreme Court in *United States v. Feola*, 420 U.S. 671, 686 (1975).

---

[2] Another possible exception discussed in *Worrell* refers to *United States v. Staggs*, 553 F.2d 1073 (7th Cir. 1977), a case where the defendant, similarly facing charges under section 111, proffered evidence of his mental condition to show it was highly unlikely he threatened the federal officer. 313 F.3d at 873–74. However, in *Staggs*, the defendant was asserting he never threatened the federal officer, 553 F.2d at 1075, while in contrast, Gatlin does not assert he never assaulted the federal officers, [DE-162] at 14–15, but instead asserts that he did not do so intentionally.

17

Had Mansfield made such an argument, and the court determined section 111 was in fact a specific intent crime, there would still need to be a reasonable probability that Mansfield could have shown that Gatlin was unable to form the requisite specific intent in order to find prejudice. Objectively, threatening to blow the officer's heads off, fetching a shotgun, then shooting at the officers shows specific intent for completing some unlawful act: assault. [DE-77] at 32–35; [DE-120] at 6.

Whether Mansfield had presented an insanity defense or asserted Gatlin was unable to form the specific intent to assault, given the facts alleged there is not a reasonable probability that the outcome would have been different and as such this claim is futile. Therefore, Gatlin's motion to amend or supplement his 2255 motion to include the claim is denied.

### e. Reasonable Force

In his fifth claim, Gatlin again asserts he was prejudiced by Mansfield's failure to obtain an assessment of whether Gatlin could appreciate the nature and quality or the wrongfulness of his acts, but in this instance because it would have been relevant to bolstering Gatlin's argument that he was acting in lawful self-defense. [DE-161] at 10. Whether Gatlin could appreciate the wrongfulness of his acts is relevant because "the quantum of force which one may use in self-defense is proportional to the threat which he reasonably apprehends." *United States v. Alvarez*, 445 F. App'x 715, 717 (4th Cir. 2011) (quoting *United States v. Black*, 692 F.2d 314, 318 (4th Cir.1982)). Gatlin contends he was using what he perceived to be reasonable force against the officers, who he believed were drug dealers trespassing on his property. [DE-162] 18–19.

To support this, Gatlin refers to the self-defense example described in *United States v. Feola*, 420 U.S. 671, 686 (1975).[3] [DE-162] at 16. In *Feola*, the Supreme Court held that a

---

[3] Gatlin also cites to *Gray v. Branker*, 529 F.3d 220 (4th Cir. 2000), a capital case where the defendant's counsel was found to be ineffective for failing to present information regarding the defendant's mental health to mitigate his

18

violation of section 111 requires "an intent to assault, not an intent to assault a federal officer," meaning it is not necessary that the defendant was aware of the federal officer's status when the violation occurred to maintain a conviction. *Id.* The Supreme Court went on further to clarify it was not "implying that the defendant's state of knowledge is never a relevant consideration under section 111." *Id.* Instead, the court found "[t]he statute does require a criminal intent, and there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of mens rea." *Id. Feola* provides the following example:

> [W]here an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent.

*Id.*

Gatlin asserts under *Feola*, he "was entitled to have evidence of his 'state of knowledge,' which was naturally impacted by his learning disability, given to the jury." [DE-162] at 17. In the *Feola* example, one might have the affirmative defense of lawful self-defense to a section 111 violation if (1) the officer fails to identify himself; (2) the officer's conduct can be reasonably interpreted as a use of unlawful force; and (3) one exerts an element of resistance against that perceived unlawful force. *Feola*, 420 U.S. at 686; *see also United States v. Wallace*, 368 F.2d 537, 538 (4th Cir.1966) (holding section 111 "does not proscribe reasonable force employed in a justifiable belief that it is exerted in self-defense"). "[W]here a defendant charged with violating § 111 claims that he was unaware that the victim was a federal officer, the question becomes: would the defendant have been justified, because of the agent's actions, in using force against the agent had the latter, in fact, been a 'civilian.'" *Alvarez*, 445 F. App'x. at 717 (quoting *United States*

culpability at sentencing. [DE-162] at 16. Gatlin never faced a capital sentence and information regarding his mental health and intellectual disability were presented prior to sentencing.

*v. Hillsman*, 522 F.2d 454, 460 (7th Cir.1975)); *see also United States v. Matheny*, 523 F. App'x 996, 998 (4th Cir. 2013) (upholding a section 111 conviction although the defendant was unaware the victim was a federal officer where the force he exerted against the officer "was disproportionate to any reasonably apprehended potential threat.").

Gatlin asserts Mansfield could have argued, considering his intellectual disability, "his use of force was objectively reasonable in the situation where two trespassers he thought were armed drug dealers affirmatively declined to vacate his property." [DE-162] at 17. As this court has already noted, "[i]t is never reasonable to use deadly force against [a] nondeadly attack." [DE-120] at 8 (quoting Wayne R. LaFave, 2 Subst. Crim. L. § 10.4 (3d ed.)). Gatlin appears to be asserting his use of deadly force was reasonable while also maintaining he could not understand the concept of reasonable force due to his intellectual disability. [DE-162] at 16–17. This would be an impermissible argument for diminished capacity. "An example of inadmissible evidence regarding a defendant's mental condition would be testimony that a defendant, who failed to meet IDRA's definition of insanity, committed a crime because of a 'supposed psychiatric compulsion or inability or failure to engage in normal reflection.'" *Worrell*, 313 F.3d at 873 (quoting *United States v. Pohlot*, 827 F.2d 889, 890 (3d Cir. 1987)). In this instance Gatlin appears to be implying a jury could find he was subjectively acting in self-defense by reason of insanity, as opposed to not guilty by reason of insanity. This would have been an impermissible argument for diminished capacity, and therefore, Gatlin's motion to amend or supplement his 2255 motion to specify he was prejudiced by Mansfield's failure to argue Gatlin used what he perceived to be reasonable force is denied.

### f. Mitigation of the Charges

Lastly, in his sixth claim, Gatlin asserts had Mansfield discovered his intellectual disability,

20

he may have been able to use that information to mitigate the charges in two ways. [DE-162] at 18–19. First, Mansfield could have brought that information to the Government to negotiate a plea deal. [DE-162] at 18–19. Alternatively, Mansfield could have explained to the jury that Gatlin was intellectually disabled and therefore less morally culpable for the charged offenses. [DE-162] at 18.

To demonstrate prejudice for counsel's failure to negotiate a plea with the Government, Gatlin "must show not only a reasonable probability that absent ineffective performance he would have accepted a plea offer and that the court would have approved it, but an additional reasonable probability that 'the government would have in fact made him a particular plea offer' in the first place." *Stanley v. United States*, No. 5:15-CR-166-2-BR, 2020 WL 1492807, at *2 (E.D.N.C. Mar. 26, 2020) (quoting *Young v. United States*, No. 2:09-CR-00223-01, 2016 WL 5496517, at *9 (S.D.W. Va. Sept. 29, 2016) (citations omitted), *aff'd*, 685 F. App'x 181 (4th Cir. 2017)). In this case, Gatlin is unable to demonstrate the Government would have made him a plea offer.

As to his second argument, the jury was not asked to determine to what degree Gatlin was culpable for the charged offenses. *See* [DE-65]. Gatlin mistakenly relies on capital cases that distinguish the intellectually disabled offender as less morally culpable and therefore not subject to the death penalty to assert he was prejudiced by Mansfield's failure to investigate his mental limitations. [DE-162] at 18; *see Atkins v. Virginia*, 536 U.S. 304, 318 (2002) (finding the intellectually disabled individual's "deficiencies do not warrant an exemption from criminal sanctions, but they do diminish their personal culpability"). Here, Gatlin was never subject to the death penalty, and his sentencing was before Judge Flanagan, who considered his intellectual disability when she concluded a downward variance was appropriate. [DE-130] at 22.

Therefore, Gatlin's claim that the outcome of his case would have been different had

21

Mansfield alerted the Government or the jury to Gatlin's intellectual disability, is futile, and Gatlin's motion to amend or supplement his 2255 petition with this claim is denied.

### iii. Government's Motion to Dismiss

Upon finding Gatlin's Motion to Amend or Supplement is denied, the court must now consider the Government's motion to dismiss Gatlin's initial 2255 petition. As discussed above, Gatlin's initial 2255 petition asserts ineffective assistance of counsel in a single claim. *See* [DE-137] at 5. Under supporting facts Gatlin references Mansfield's failure to perceive his intellectual disability or have him evaluated, which he asserts impacted his mens rea and the affirmative defense of lawful self-defense. *Id.*

The Government asserts that Gatlin has not plausibly alleged that his trial counsel was ineffective, and thus his claims should be dismissed. [DE-142] at 10–15. Specifically, the Government argues had Mansfield recognized Gatlin's intellectual disability before trial and used it in his defense, it would not have affected the outcome of the case. *Id.* at 1. The Government maintains that even if Gatlin could allege deficient performance, he cannot establish the requisite prejudice under *Strickland. Id.*

For the reasons outlined above, Gatlin has not plausibly alleged a claim for ineffective assistance of counsel because he cannot show a reasonable probability that had Mansfield taken his intellectual disability into account and used it to bolster the self-defense argument or to attempt to show he could not form the requisite intent the outcome of the trial would have been different. As Gatlin is unable to plausibly allege prejudice, it is recommended his ineffective assistance of counsel claim be dismissed.

## IV. Conclusion

For the reasons stated above, Gatlin's motion to supplement, [DE-160], is denied and it is

22

recommended that that the Government's motion to dismiss, [DE-141], be granted.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **February 6, 2026** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the 23rd day of January, 2026.

Robert B. Jones, Jr.
United States Magistrate Judge

23